J. W. LILES *v.* MRS. W. J. MAY.

[63 South. 217.]

1. APPEAL AND ERROR. *Record. Objections. Evidence. Wills Contest. Verdict. Agreement as to form. Statements in briefs.*

Questions as to the competency of evidence will not be considered by the court on appeal where the record shows no objection to its admission in the court below.

2. WILLS. *Contest. Evidence.*

Where a will was contested on the ground of forgery, and the sole beneficiary testified in his own behalf, that he wrote the will, statements made by him after the alleged execution of the will, tending to show that no will had then been made were admissible.

3. WILLS. *Contest. Verdict. Agreement as to form.*

Where on the trial of an issue of *devisavit vel non*, prior to the rendition by the jury of its verdict, all parties in interest, entered into an agreement that if the verdict as rendered should not be in proper form, they would themselves put it in proper

form, and after the rendition of the verdict it was put in proper form, this agreed verdict must be accepted as the one which the jury intended to render and would have rendered, had the matter been resubmitted to them, and the chancellor properly rendered a decree accordingly.

4. APPEAL AND ERROR. *Record. Statement in briefs.*

Where the statements of counsel, in their brief is not borne out by the record the court will decide by the record and not by the briefs of counsel.

5. WILLS. *Contest. Forgery. Evidence.*

On the evidence disclosed by the record the cause was properly submitted to the jury.

APPEAL from the chancery court of Pike county.

HON. J. S. HICKS, Chancellor.

J. W. Liles was proponent of a will which was contested by Mrs. W. J. May and others. From a decree for contestants, proponent appeals.

The facts are fully stated in the opinion of the court.

*Price & Whitfield,* for appellant.

We want to state at the outset to the court, that there never was a greater travesty than the verdict for the contestants in this case, and that this record shows numerous reversible errors in it, but, in preparing this brief, we found the authorities and the text writers on evidence and the Mississippi supreme court, so emphatic in their holdings that declarations of a testator, Mrs. Liles in this case, or Mr. Liles, to the effect that the testator would not make a will or had not made a will, or with reference to her desires as to what should become of her property, are universally incompetent and inadmissible when produced by the contestants where the charge is forgery, that we propose to write this brief on that proposition, which must necessarily require a reversal of this case at the hands of this court, or else an overruling by this court of the overwhelming weight of authority on this proposition.

We first ask the court to distinguish clearly between the issue of forgery in a will contest and the other issues, such as undue influence, insanity, etc., which were clearly distinguished by the court speaking through WHITFIELD, C. J., in the case of *Miller* v. *Miller*, 51 So. 210. That case is on all fours with this case, the issue in that case was identically the same as the issue in this case, and the court in that case clearly distinguished it from the case of *Sheehan* v. *Kearney* and held in the Miller case that where the issue was forgery declarations of the testator to the effect that he would not make a will are clearly incompetent as mere hearsay, which decision is supported by 3 Wigmore on Evidence, sec. 1736, and an overwhelming weight of authority on this proposition.

The statement of facts taken from the Southern Reporter in the Miller case, or that part of it which shows what the issue was, is as follows: "Appellants charged that their father left no will and that the instrument attempted to be proven is a forgery. Issue *devisavit vel non* was joined and the case tried before a jury who returned a verdict for the proponent." This shows clearly that the only issue in that case was forgery, as here, and that part of the opinion of the court which is in point is as follows: "The testimony offered to show declarations of the testator to the effect that he would not make a will, was clearly incompetent, as mere hearsay. 3 Wigmore on Evidence, sec. 1736.

There is nothing to the contrary of what we have said on either of these points in *Sheehan* v. *Kearney*, 82 Miss. 688, 21 So. 41, 35 L. R. A. 102. We held in that opinion, cited with approval by Wigmore on Evidence, in his discussion of the subject (3 Wigmore on Evidence, 2244), that the declarations of a testator as to his intentions with respect to the disposition of his property, made before or after the execution of the will, or at the time of the execution of the will, are competent, upon well-settled principles, on the issue of undue influence and

the issue of insanity. Those are not the issues in this case."

This principle of law is clearly announced and established by Wigmore, the greatest living authority on evidence, in volume 3 of his work at section 1736, in the following words:

"1736. Post-testamentary Statements as to Execution, Contents, or Revocation. First Theory. Statements of the second, third, and fourth sorts above enumerated, i. e., statements affirming or denying the fact of execution, contents, or revocation of a will, are, in this first and simple aspect, to be taken as mere assertions of an external fact, offered as evidence of the truth of the assertion. They do not come within the present exception, nor within any other of the established ones. They are therefore ordinary hearsay assertions, and are inadmissible. This is the view taken by a number of courts, citing an overwhelming weight of authority in accord with his view, for which we contend in this case, the second, third and fourth sorts above enumerated," referring to statements of a testator, as follows:

"(2) That he has or has not made a will of a particular tenor; (3) that he has or has not made a will, or that a particular will is or is not in existence, or is, or is not genuine; (4) that a particular will has or has not been destroyed or otherwise revoked."

This opinion of the Mississippi supreme court in *Miller* v. *Miller* and the above quotation from Wigmore on Evidence are supported by a very large number of cases, out of which we will select six which we desire to call the court's special attention to. Those six are as follows: *In re Gordon's Will,* 50 N. J. Eq. 397; *Leslie* v. *McMurty,* 20 Ark. 301; *Kennedy* v. *Upshaw,* 64 Texas, 411; *In re Pemberton's Will,* 40 N. J. Eq. (13 Stew.); *Wells* v. *Wells,* 144 Mo. 198; and *Lawlor's Will,* 83 N. Y. S. 726.

*R. W. Cutrer,* for appellees.

The jury, who saw and heard the witnesses testify in this case, were the sole judges of their credibility, and their verdict should be conclusive of the facts, for there are facts and circumstances in evidence that warranted them in concluding that the instrument offered as the last will and testament of Mrs. Lile, was in truth and fact not her will.

The chancellor saw these witnesses, their action on the witness stand, and heard their testimony also, and if there had been "any travesty on justice" as said by counsel for appellant in their brief, I believe this court knows Chancellor Hicks too well to think for a moment he would sit quietly by and permit such in his court.

He heard these facts four times, and was of the opinion they were proper to be submitted to the consideration of the jury, and as stated *supra,* they passed upon them and their verdict should be conclusive.

There can be no question but that the declarations of Mrs. Lile were admissible in evidence in this case, and especially is this true when a number of these declarations were made in the presence of appellant, and, as will be seen from the evidence, concurred in by him.

The court will notice from the evidence in this case that the instrument purporting to be the will of Mrs. Lile was written by Mr. Lile. Her name signed to it by Mr. Lile, and one of the subscribing witnesses to the instrument is one J. C. Owen, a grandson of Mr. Lile by a former marriage, and the other witness a relative and friend of Owen.

Here we have the sole legatee writing the instrument and signing the name of the party alleged to have made it, and his grandson a subscribing witness, who is an interested party, because if Mr. Lile should succeed in establishing the instrument as the last will and testament of Mrs. Nancy Lile, this witness Owen will inherit an interest in this property instead of appellees.

If Mrs. Lile had caused appellant to write and sign her name to the instrument offered as her will some three years prior to her death, why did she say just a month before her death in the presence of Mr. Lile, appellant, to Mr. Walker that at her death her property was to go to her children? Why did he speak up and say, "Yes, I have put my property in my name for my children, and I have a lot for each one of them, and a lot for me to have a good time on, etc."

Why did Mr. Lile, the day after the burial of Mrs. Lile tell Mrs. May and Mrs. Walker that their mother had left no will, and that her property went to her children and that he would stay on the place and take care of it for the heirs, if he had written a will for her and signed her name to it for her some three years before her death?

This evidence was admissible under the facts in this case, because all of the testamentary declarations do not conform to the alleged will, and these, of course, are circumstances which the jury are to weigh in their consideration.

I think the case of *Sheehan* v. *Kearney,* 32 Miss. 688, settled this question adversely to appellant's contention.

There is nothing in counsel's contention that the jury decided this case in their favor. If this was true, why did they appeal the case here? Before the jury reported in this case that they had agreed upon a verdict it was agreed between counsel representing appellant and appellee that if the verdict of the jury was not in proper form he would put it in such form before the decree was drawn, so when the jury reported that it had agreed upon a verdict the chancellor had then brought out and they had written out on the back of one of the instructions the following:

"We, the jury, find for the contestants." At the bottom of the page was written in lead pencil, "We believe Mrs. Lile was mislead in signing the instrument."

It was then and there agreed by and between counsel that that was no part of the verdict of the jury; the jury

was polled, and one member of the jury put that at the bottom of the page; the attorneys for the appellant knew that it was no part of the verdict; Judge Hicks knew it was no part of the verdict; the jury said it was no part of their verdict; and by agreement with counsel for appellant and appellee the chancellor discharged the jury.

Argued orally by *G. Q. Whitfield,* for appellant and *R. W. Cutrer,* for appellee.

SMITH, C. J., delivered the opinion of the court.

On April 12, 1907, Mrs. Nancy Liles died, leaving surviving her a husband, J. W. Liles, appellant; and several children of a former marriage, appellees herein. On the 1st day of August following an instrument, alleged to be the will of Mrs. Liles, attested by two subscribing witnesses, and proven by their affidavits, was by appellant propounded for, and afterwards admitted to, probate. On the 13th day of November following, appellees filed a petition in the court below, alleged that the will was a forgery and praying that the probate thereof be set aside. Upon the coming in of appellant's answer to this petition, an issue *devisavit vel non* was made up, and the case submitted to a jury, which rendered a verdict in favor of contestants, on which a decree was entered setting aside the probate of the will. From this decree an appeal is prosecuted to this court.

This will, which is a joint will of appellant and his wife, is in the following language:

"Nancy Liles J. W. Liles one lot 6 Sqr. 9 East McComb this day we make our will to each other if Nancy Liles dies first lot fauls to J. W. Liles he cand sell or do wat he pleas with it also Nancy Liles can do the same if she should out live J. W. Liles. This day April 20, 1904.

her
"NANCY X LILES    J. W. LILES.    JOSEPH BEARD, Wit-
      mark
ness.  JAMES C. OWEN."

The execution of the above will was proven, without
objection, by the testimony of appellant and the sub-
scribing witness Beard.  According to them, the will was
written by appellant at Mrs. Liles' dictation, she signing
her name by mark.  Appellees were all adults, and at
the time of their mother's marriage to appellant she was
not living with any of them, but seemed to be supporting
herself by her own labor.

On the part of appellees it was shown:  That Mrs.
Liles, a short time before her death, stated to several
parties that after her death she wanted her property to
go to her children.    "That Mr. Liles had his property
for his children, and that she wanted her children to have
her property."   That in February, prior to the death
of Mrs. Liles, Mr. Liles said that "she [referring to his
wife] had her own property in her name, and he had
his own property, and that her property belonged to her
children at her death, and that he had a lot apiece for
each one of his children."   That after the death of Mrs.
Liles he said nothing to any of her children about a will
until some time after it was probated.  That on the day
after Mrs. Liles was buried he told two of her children,
who had come from their home in Louisiana to attend her
funeral, that he and Mrs. Liles had "agreed that which-
ever one died first the other is to stay on the old home
until his death, and keep everything until the other's
death;" and upon their telling him, "All right," that he
could stay there if he wanted to, he further said:  "I
have seven lots for my children. . . .  What I made I
put it to my own benefit for my children."  That when
they returend home he accompanied them to the railroad
station.  That he showed them the line between his own
and his wife's property, pointed out that which belonged

to his wife, and said: "There is the property which belongs to your mother, and all that big patch over there is mine. . '. . This is you all's, and all that big field there is mine. . . . This is for you children, . . . and that over there was for his children."

It was also shown that some time after that will was probated the witness Beard was asked when he signed the will, and he replied in 1907. Beard, in answer to this, testified that he meant he signed the affidavits in 1907. The witness making the first statement, however, said that the affidavit was not mentioned, and all of the conversation with Owen related to the will itself, and not to an affidavit. The subscribing witness, Owen, did not testify. He seems not to have been a resident of Mc-Comb City in 1904, and one witness testified that he was intimately acquainted with Liles' family, lived in April, 1904, within a few doors of the Liles residence, and was a frequent visitor therein; that he was personally acquainted with Owen, and did not see him in McComb City during that year. Owen is a grandson of appellant, being the son of his daughter by a former marriage. One witness testified in behalf of appellant that he saw Owen in McComb City, the place where the Liles lived, in April 1904, and that Mrs. Liles told him about that time that they (meaning herself and husband) had made their will, and that "if one dies the other will have the property." Evidence was also introduced showing that appellant had the reputation of being a man of good moral character.

The decree entered in the court below contained the following recital: "There came a jury," etc., "who," etc., "after hearing all of the evidence and the argument of counsel and receiving the instructions of the court, retired to consider of their verdict, and after due consideration of the same returned into open court upon their oaths the following verdict: 'We, the jury, find for the contestants. We believe that Mrs. Nancy Liles was misled in signing the will.' And the counsel for the propo-

nent and contestants having agreed before the verdict
of the jury between themselves that if the verdict of the
jury was not in proper form the same could be put in
proper form by them after verdict, and counsel for pro-
ponent and contestants being in court when the jury re-
turned their verdict, and which was read in open court,
and no objection made to the form of the verdict, and
before the jury was discharged in said case counsel for
proponent and contestants announced to the court that
they had agreed between themselves that the verdict of
the jury may be put in proper form, and upon this agree-
ment the jury was not returned to the jury room to fur-
ther consider of their verdict, and the above verdict was
accepted and the jury discharged, and the said verdict
was put in the following form by agreement: 'We, the
jury, find for the contestants, Mrs. W. J. May and Henry,
Thomas, Oscar, Edgar, Louise, Rena, Monroe, Mattie,
Lillie, and Lizzie Walker that the instrument offered as
the last will and testament of Mrs. Nancy Liles, deceased,
is not her genuine last will and testament.' It is there-
fore ordered, adjudged, and decreed,'' etc.

Appellant's contentions are: (1) That the court erred
in admitting in evidence statements, made by Mrs. Liles
after the alleged execution of the will, that she wanted
her property to go to her children after her death; (2)
that the court erred in admitting in evidence statements
made by Mr. Liles after the alleged execution of the will,
tending to show that no will had then been made; (3)
that on the verdict rendered by the jury the decree should
have been for the proponent, appellant; (4) that the evi-
dence is insufficient to support the verdict.

The statements of Mr. and Mrs. Liles, made after the
alleged execution of the will, that she wanted her chil-
dren to have her property after her death, are objected to
as being incompetent under the hearsay rule, where the
issue is solely whether or not the will was forged, and
we are referred in support thereof, among other au-

thorities, to Wigmore on Evidence, vol. 3, section 1736, and *Miller* v. *Miller,* 96 Miss. 526, 51 South. 210.

The question of the competency of the statements made by Mrs. Liles does not arise for the reason that we have failed to find any objection thereto in the record. The objection referred to by counsel as being on pages 42 and 54 of the record relate to statements made by appellant, and not by Mrs. Liles.

The declarations of appellant introduced in evidence were competent. He is not only the sole beneficiary under the will, but was introduced as a witness in his own behalf, and testified that he wrote the will himself. These declarations, if made, tend to contradict him on this point, for the reason that they are inconsistent with knowledge on his part at the time they were made that a will was then in existence.

Prior to the rendition by the jury of its verdict, counsel for all parties hereto seem to have entered into an agreement that, if the verdict as rendered should not be in proper form, they would themselves put it in proper form. The verdict actually rendered was in the following language: "We, the jury, find for the contestants. We believe that Mrs. Nancy Liles was misled in signing the will." The second sentence of this verdict counsel for appellant contend negatives the finding for contestants, and shows conclusively that the jury found as a matter of fact that the will was not forged, but was signed by the testatrix, and, since forgery was the only issue submitted to them, the decree should have been entered on the verdict as rendered for appellant, the proponent of the will.

We are relieved from deciding this point, for the reason that the record recites, as hereinbefore set out, that counsel agreed that the verdict should be put into the following language: "We, the jury, find for the contestants, Mrs. W. J. May, and Henry, Thomas, Oscar, Edgar, Louise, Rena, Monroe, Mattie, Lillie, and Lizzie

Walker, that the instrument offered as the last will and testament of Mrs. Nancy Liles, deceased, is not her genuine last will and testament.'' This agreed verdict must be accepted as the one which the jury intended to render, and would have rendered, had the matter been resubmitted to them, and the chancellor properly entered a decree accordingly.

Counsel for appellant in their briefs say that by this agreement they simply meant to submit to the court that, if the verdict as rendered should be construed as one for contestants, then they would agree that its form should be as stated. The trouble with this contention is that the record does not so state, and the cause must, of course, be decided by the record, and not by the statements in the briefs of counsel.

On the evidence we think the cause was a proper one for submission to the jury.

*Affirmed.*

REED, J. (dissenting).

I am constrained to dissent. I think the peremptory instruction asked by appellant should have been given. Mrs. Liles' will was presented for probate. It was proved by the affidavits of both subscribing witnesses. The chancery clerk entered his decree admitting it to probate. Several months afterwards, objection was made by appellees, who filed a petition charging that the will was a forgery. The sole issue of forgery is presented by the petition and answer.

The testimony introduced on the trial of the issue by appellant is certainly sufficient to prove the proper execution of the will. The contestants undertook to prove that the instruments was not the true and original last will and testament of Mrs. Liles, but was a forgery. I will not enter into a review of the testimony. It seems clear to me that it is not sufficient proof of forgery to support the jury's verdict for appellees. Some of the statements of appellees' witnesses may cast a suspicion

upon the will's execution, but I cannot see that it rises to the dignity of proof. To illustrate: In the attempt to show that one of the attesting witnesses, Mr. Owen, was not in McComb City at the time of the execution of the will. in 1904, just one person testified for appellees, and said that he did not see Mr. Owen in McComb City in 1904. He further stated: "I cannot swear that he was not there." On the other hand, in addition to Mr. Owen's affidavit when he proved the will, there is testimony from several persons who state positively that he was in McComb City in 1904. Can it be said that this negative statement of one witness shall, under the circumstances, have any weight whatever?

I do not perceive that the various statements which the several witnesses for appellees claim were made by the old couple touching the disposition of their property will amount to sufficient proof to justify a verdict by the jury of forgery. The record shows me an old couple, nearing the end of their days, making disposition of their property acquired through their joint industry and economy, so that the survivor might continue in its use and enjoyment as owner. The evidence presented to show that the instrument purporting to effect this disposition is not a genuine will, but a forgery, in my opinion falls far short of being enough to warrant the jury's verdict.